# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | | |
|---|---|---|
| DISH NETWORK L.L.C., SLING TV L.L.C., and NAGRASTAR LLC, | § § § § | Case No. _____ |
| Plaintiffs, | § § | |
| v. | § § | |
| JASON LABOSSIERE, SEAN BEAMAN, STEFAN GOLLNER, and OSIVETTE BRITO, individually and collectively d/b/a EXPEDITE TV, MUNDO TV and MUST TV, | § § § § § § § § | |
| Defendants. | § | |

## COMPLAINT

Plaintiffs DISH Network L.L.C. ("DISH"), Sling TV L.L.C. ("Sling"), and NagraStar LLC ("NagraStar" and collectively "Plaintiffs") file this action against Defendants Jason LaBossiere, Sean Beaman, Stefan Gollner and Osivette Brito ("Defendants") for their violations of the Federal Communications Act ("FCA"), 47 U.S.C. § 605, and the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201.

## NATURE OF THE ACTION

1. DISH and Sling are television service providers that deliver content live and on demand by satellite and internet to millions of authorized, fee-paying subscribers in the United States using security technologies provided by NagraStar

and other content protection providers. Defendants have been operating illicit streaming services known as ExpediteTV, Mundo TV, and Must TV (collectively, the "Services"), whereby Defendants acquire DISH and Sling's transmissions of television programming and retransmit that programming without authorization to users of their services (the "Rebroadcasting Scheme").

## PARTIES

2. Plaintiff DISH Network L.L.C. is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

3. Plaintiff Sling TV L.L.C. is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

4. Plaintiff NagraStar LLC is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

5. Defendant Jason LaBossiere is believed to reside in Seminole, Florida.

6. Defendant Sean Beaman is believed to reside in Ladera Ranch, California.

7. Defendant Stefan Gollner is believed to reside in Ladera Ranch, California.

8. Defendant Osivette Brito is believed to reside in Seminole, Florida.

9. On information and belief, LaBossiere, Beaman, Gollner and Brito each personally participated in, exercised their ability to supervise, and maintained a direct financial interest in the Rebroadcasting Scheme. LaBossiere, Beaman, Gollner and Brito are believed to have acted as each other's agents and under each

other's control when carrying out the Rebroadcasting Scheme and such actions by LaBossiere, Beaman, Gollner and Brito were within the scope of that agency.

## JURISDICTION & VENUE

10. Plaintiffs assert claims against Defendants for violations of 47 U.S.C. § 605 and 17 U.S.C. § 1201. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

11. Defendants are subject to personal jurisdiction in this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) because Defendants, through their Rebroadcasting Scheme, have purposefully directed their conduct toward and purposefully availed themselves of the privileges of conducting business in Florida, causing injury to Plaintiffs in Florida. Defendants LaBossiere and Brito are also subject to personal jurisdiction in this Court because they each reside in Florida.

12. Venue is appropriate in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district.

## DEFENDANTS' REBROADCASTING SCHEME

*Plaintiffs' Programming*

13. DISH delivers television programming to millions of subscribers nationwide using a direct broadcast satellite system ("DISH Programming"). DISH's satellite transmissions of DISH Programming are secured using a conditional access system ("CAS") provided by NagraStar. The CAS uses a key-based encryption and decryption process to make DISH Programming accessible

to only authorized DISH subscribers that purchased access to that DISH Programming and restricts unauthorized access to, copying, and retransmission of DISH Programming.

14. DISH and Sling deliver television programming to millions of subscribers nationwide using the public internet. DISH's internet transmissions of DISH Programming and Sling's internet transmissions of Sling Programming are secured using digital rights management ("DRM") technologies that include, based upon the subscriber's viewing platform, Google's Widevine DRM, Apple's FairPlay DRM, and Microsoft's PlayReady DRM. Each DRM has a key-based encryption and decryption process that is used to make DISH Programming and Sling Programming accessible to only authorized DISH or Sling subscribers that purchased access to that DISH Programming or Sling Programming and restricts unauthorized access to, copying, and retransmission of DISH Programming and Sling Programming.

*Plaintiffs' Prior Lawsuit Involving Defendants*

15. DISH and NagraStar filed a case against LaBossiere and other defendants on June 4, 2018 for violations of the FCA based upon their operation of an illicit streaming service known as SetTV, Case No. 8:18-cv-1332-VMC-AAS (M.D. Fla.). Beaman and Gollner were co-owners of the corporate defendant Set Broadcast LLC, along with LaBossiere. Brito was a reseller of the SetTV service.

16. The SetTV service, like the services at issue in this action, was used to unlawfully retransmit DISH Programming. Following the Court's issuance of a

4

temporary restraining order and preliminary injunction, the named defendants and Beaman entered into a settlement with DISH and NagraStar and agreed to the entry of a final judgment in the amount of $90,199,000 and a permanent injunction, which the Court entered on October 24, 2018.

17. LaBossiere and his co-defendants stipulated that "[t]he SetTV streaming service distributed DISH Programming without authorization from DISH" and such conduct amounted to willful and malicious violations of the FCA, as supported by their stipulations that "Defendants knew that DISH Programming was being taken from DISH's satellite broadcasts and redistributed without authorization on their SetTV streaming service" and "Defendants knew that the unauthorized distribution of DISH Programming on their SetTV streaming service was certain to harm DISH by depriving DISH of legitimate, paying subscribers and corresponding equipment and subscription revenues."

18. The injunction permanently enjoined LaBossiere, his co-defendants, "and any of their officers, agents, servants, employees, or other persons acting in active concert or participation with [them]" from:

    a.    "receiving, retransmitting, copying, or assisting others in receiving, retransmitting, or copying, any of DISH's satellite or over-the-top Internet transmissions of television programming or any content contained therein without authorization;" and

    b.    "distributing any passcode, subscription, . . . or any other device or equipment that is primarily of assistance in, or that is intended to be used for, receiving or assisting in receiving DISH's satellite or over-the-top Internet transmissions of television programming or any content contained therein without authorization."

*Defendants' Continued Unauthorized Rebroadcasting of Plaintiffs' Programming*

19. Defendants rebranded their SetTV service as ExpediteTV in response to the Florida lawsuit and in violation of the injunctions and settlement entered in that case. Defendants' ExpediteTV service was marketed and sold to users through the web domain ExpediteTV.com. ExpediteTV was advertised as a subscription-based streaming service providing 800+ channels, pay-per-view events, and sports programming, among other content, all for a low monthly fee.



*Excerpt from www.expeditetv.com*

20. On information and belief, Defendants rebranded their ExpediteTV service as Mundo TV and Must TV. Defendants' Mundo TV service is advertised and offered for sale to users through the web domain Mundo-TV.com. Mundo TV is marketed as "[a]ll your favorite movies, series and sports events in one place," offering "400+ channels" as an alternative to "expensive cable or a satellite dish" for a low monthly fee.

6



*Excerpts from www.mundo-tv.com*

21. Defendants' Must TV service is advertised and offered for sale at the web domain Must-TV.com. Must TV is marketed very similar to Mundo TV, touting "400+ channels" and pay-per-view events offered as an alternative to "expensive cable or a satellite dish" for a similar low monthly fee.



*Excerpts from www.must-tv.com*

7

22. On information and belief, Mundo TV and Must TV are effectively the same service. Mundo-TV.com and Must-TV.com contain similar website content including the same typographical errors, share the same domain name registrar and web services provider, and offer for download the same application that is used to access the Mundo TV and Must TV services, including DISH Programming and Sling Programming.

23. DISH Programming and Sling Programming was retransmitted on the Services without Plaintiffs' authorization, thereby allowing users of the Services to receive such programming without paying the requisite subscription fee to DISH or Sling. Periodic monitoring conducted on a sampling of channels on the Services identified several instances where the Services were configured to retransmit DISH Programming or Sling Programming without authorization.



*DISH's Willow Cricket and Sling's NBA League Pass Channels on ExpediteTV*

24. The DISH Programming retransmitted on Expedite TV originated from DISH's satellite communications, while the Sling Programming retransmitted on Expedite TV was received from Sling's internet communications.

The DISH or Sling Programming retransmitted on Mundo TV and Must TV was received from the internet communications of DISH or Sling. Watermarks added to DISH's satellite communications for purposes of analyzing the Services, and other identifiers unique to the television broadcasts of DISH and Sling, were detected when viewing DISH Programming and Sling Programming on the Services, thus confirming DISH's satellite communications and DISH or Sling's internet communications are the source of the DISH Programming and Sling Programming retransmitted on the Services.

25. On information and belief, Defendants directly engage in, aid and abet, or act within the scope of a principal-agent relationship with other persons in establishing and controlling DISH and Sling subscription accounts used to obtain DISH Programming and Sling Programming retransmitted on the Services.

26. On information and belief, Defendants directly engage in, aid and abet, or act within the scope of a principal-agent relationship with other persons in the circumvention of DRMs that control access to the internet communications of DISH Programming and Sling Programming in order to retransmit DISH Programming and Sling Programming on their Services. The DRMs are believed to be circumvented using either a differential fault analysis attack where faults are injected into the DRM to disrupt its operation and create pathways to extract the keys necessary to decrypt DISH Programming and Sling Programming, or a man-in-the-middle attack whereby customized software is used to bypass the DRM by

intercepting DISH Programming or Sling Programming passing from the DRM's decryption library to the user's viewing platform.

### *Defendants' Sale of Device Codes*

27. Defendants profit from the Rebroadcasting Scheme through the sale of codes that are designed and produced to enable a set-top box or other internet-enabled device to access servers used to retransmit DISH Programming and Sling Programming on the Services (a "Device Code"). Defendants sold Device Codes on ExpediteTV.com, Mundo-TV.com, and Must-TV.com for approximately $24 per month for access to each Service.

28. In addition to purchasing a Device Code, users must also download an application to access the Services. The application used to access the Expedite TV service is called Lenox Media Player and was reportedly developed by Brito. The Mundo TV and Must TV services were accessed using the Ultra Media Player application, which is similar to the Lenox Media Player developed by Brito.

29. Defendants retained two brothers to set up entities and establish bank and merchant accounts in the name of those entities to process credit card payments for Device Codes sold through ExpediteTV.com. The brothers previously assisted Defendants in processing payments in connection with their SetTV service. Proceeds from the sale of ExpediteTV Device Codes were deposited into a bank account established by Gollner, among other accounts.

30. Defendants also processed credit card payments for Device Codes sold through ExpediteTV.com using an entity and Florida fictitious business name

that are linked directly to LaBossiere and Beaman and from which payments flowed back to Brito and Gollner. Credit card payments for Device Codes to the Mundo TV and Must TV services were also processed through Florida entities connected to LaBossiere, Beaman, Gollner and Brito.

31. Defendants communicated with existing and prospective users of their Services through Avochato, a text/SMS messaging and live chat service. The Avochato account was created by Beaman, paid for by means that included Beaman's credit cards and Gollner's bank account, and was used by LaBossiere, Beaman, Gollner and Brito. Defendants used Avochato for purposes that included delivering Device Codes to users, reminding such users when their Device Codes were about to expire and how to renew them, and by otherwise marketing their ExpediteTV and other related services to prospective users. Example communications concerning Expedite TV include:

| "Thank you for your order from ExpediteTV . . . Here are your login details" |
| --- |
| "ExpediteTV Login: http://app.expeditetv.com Service ID: XXX User Name: XXX Password: XXX Expire Date: 27th December 2018 Thank You." |
| "Your TV subscription from ExpediteTv.com is expiring … Please renew your subscription by clicking …" |
| "Try ExpediteTV $15/month. 800 Channels+ VOD Movies" |

32. Defendants' wrongful conduct causes irreparable harm to Plaintiffs for which there is no adequate remedy at law. Defendants provided an unknown number of users of the Services with unauthorized access to DISH Programming and Sling Programming, thereby damaging Plaintiffs' reputations and goodwill

and resulting in an unknown amount of revenues being diverted from Plaintiffs and an unknown amount of profits being received by Defendants.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of the FCA, 47 U.S.C. § 605(a), Asserted by DISH

33. DISH repeats and realleges the allegations in paragraphs 1-32.

34. Defendants divulged, used, and assisted others to receive DISH Programming that originated from DISH's satellite communications through the Rebroadcasting Scheme, without the authorization of DISH and for the benefit of Defendants and users of their Expedite TV service that were not entitled to receive such DISH Programming, in violation of 47 U.S.C. § 605(a).

35. Defendants' distribution of Device Codes and the Lenox Media Player application assisted users of their Expedite TV service to receive DISH Programming, without the authorization of DISH and for the benefit of Defendants and users of their ExpediteTV service that were not entitled to receive such DISH Programming, in violation of 47 U.S.C. § 605(a).

36. Defendants' violations of 47 U.S.C. § 605(a) were willful and for purposes of commercial advantage and private financial gain.

37. Defendants were aware or had reason to believe that their actions violated 47 U.S.C. § 605(a). Such violations have caused damage to DISH in an amount to be proven at trial. Unless restrained and enjoined, Defendants will continue to violate 47 U.S.C. § 605(a).

## COUNT II
## Violations of the FCA, 47 U.S.C. § 605(e)(4), Asserted by DISH and NagraStar

38. DISH and NagraStar repeat and reallege the allegations in paragraphs 1-32.

39. Defendants distribute Device Codes and the Lenox Media Player application for purposes of divulging, using, and assisting others to receive DISH Programming originating from DISH's satellite communications as part of the Rebroadcasting Scheme, in violation of 47 U.S.C. § 605(e)(4). Defendants intended for Device Codes and the Lenox Media Player application to be used in divulging and receiving DISH Programming, without authorization from DISH and for the benefit of Defendants and users of their Expedite TV service that were not entitled to receive such DISH Programming, which is activity proscribed by 47 U.S.C. § 605(a).

40. Defendants' violations of 47 U.S.C. § 605(e)(4) were willful and for purposes of commercial advantage and private financial gain.

41. Defendants were aware or had reason to believe that their actions violated 47 U.S.C. § 605(e)(4). Such violations caused damage to Plaintiffs in an amount to be proven at trial. Unless restrained and enjoined, Defendants will continue to violate 47 U.S.C. § 605(e)(4).

## COUNT III
## Violations of the DMCA, 17 U.S.C. § 1201(a)(1)(A), Asserted by DISH and Sling

42. DISH and Sling repeat and reallege the allegations in paragraphs 1-32

43. DISH and Sling use technological protection measures to effectively control access to DISH and Sling internet communications of DISH Programming and Sling Programming, which include works protected under the Copyright Act. DISH and Sling implement these technological protection measures with the consent of other copyright owners that provide the DISH Programming and Sling Programming.

44. On information and belief, Defendants acquire DISH Programming and Sling Programming for their Services by directly engaging in, aiding and abetting, or acting in the scope of a principal-agent relationship with other persons to circumvent technological protection measures used to control access to DISH Programming and Sling Programming, in violation of 17 U.S.C. § 1201(a)(1)(A).

45. Defendants' violations of 17 U.S.C. § 1201(a)(1)(A) were willful and for purposes of commercial advantage and private financial gain.

46. Defendants were aware or had reason to believe that their actions violated 17 U.S.C. § 1201(a)(1)(A). Such violations have caused damage to DISH and Sling in an amount to be proven at trial. Unless restrained and enjoined, Defendants will continue to violate 17 U.S.C. § 1201(a)(1)(A).

## **PRAYER FOR RELIEF**

Plaintiffs request a judgment against Defendants as follows:

A. For a permanent injunction under Fed. R. Civ. P. 65, 47 U.S.C. § 605(e)(3)(B)(i), and 17 U.S.C. § 1203(b)(1) that prohibits Defendants, and any officer, agent, servant, employee, or other person acting in active concert or

participation with any of them that receives actual notice of the order, from:

        1.      Receiving or assisting others in receiving DISH's satellite communications or the content of such communications without DISH's authorization, including through the Services or any similar internet streaming service;

        2.      Selling or distributing any device or equipment that is intended for receiving or assisting others in receiving DISH's satellite communications of television programming or the content of such communications, including codes or credits used to access the Services or any similar internet streaming service;

        3.      Circumventing a DRM or any other technological protection measure that controls access to DISH Programming or Sling Programming, including through the use of DISH and Sling subscription accounts to provide DISH Programming and Sling programming for the Services or any similar internet streaming service;

    B.      For an order impounding and allowing Plaintiffs to take possession of and destroy all Device Codes, circumvention technologies, and any other device or equipment in Defendants' possession, custody, or control that the Court believes to have been involved in a violation of the FCA or DMCA, pursuant to 47 U.S.C. § 605(e)(3)(B)(i) and 17 U.S.C. § 1203(b)(2);

    C.      For an order requiring Defendants to preserve and turn over to Plaintiffs all hard copy and electronic records regarding persons involved in the Rebroadcasting Scheme;

  D. For an order finding Defendants in contempt of court and imposing appropriate sanctions for their violations of paragraphs 3(a) and 3(b) of the Final Judgment and Permanent Injunction entered on October 24, 2018 in the SetTV litigation, Case No. 8:18-cv-1332-VMC-AAS (M.D. Fla.)

  E. Award DISH the greater of (1) its actual damages together with Defendants' profits that are attributable to the violations identified in Count I, or (2) statutory damages up to $10,000 for each violation of 47 U.S.C. § 605(a), pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II).  In either scenario, the damages should be increased by $100,000 for each violation, in accordance with 47 U.S.C. § 605(e)(3)(C)(ii);

  F. Award DISH and NagraStar collectively the greater of (1) their combined actual damages together with Defendants' profits that are attributable to the violations identified in Count II, or (2) statutory damages up to $100,000 for each violation of 47 U.S.C. § 605(e)(4), pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II);

  G. Award DISH and Sling collectively the greater of (1) their combined actual damages together with Defendants' profits that are attributable to the violations identified in Count III, or (2) statutory damages up to $2,500 for each violation of 17 U.S.C. § 1201(a)(1)(A), pursuant to 17 U.S.C. § 1203(c)(2) and (c)(3)(A);

  H. Award Plaintiffs their attorney's fees and costs under 47 U.S.C. § 605(e)(3)(B)(iii) and 17 U.S.C. § 1203(b)(4)-(5);

      I.      For a complete and accurate accounting of all profits and other benefits received by Defendants as a result of the wrongful conduct identified in this complaint;

      J.      For pre and post-judgment interest on all damages awarded by the Court, from the earliest date permitted by law at the maximum rate permitted by law; and

      K.      For such additional relief as the Court deems just and equitable.

Dated: March 15, 2022      Respectfully submitted,

        /s/ James A. Boatman, Jr.
James A. Boatman, Jr. (Trial Counsel)
Florida Bar No. 0130184
**BOATMAN RICCI**
3021 Airport-Pulling Road North, Suite 202
Naples, Florida 34105
Telephone: (239) 330-1494
Email: courtfilings@boatmanricci.com

Attorneys for Plaintiffs DISH Network L.L.C., Sling TV L.L.C., and NagraStar LLC